JOHNSON *v.* STATE OF MARYLAND

[No. 178, September Term, 1973.]

*Decided February 28, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Alfred J. O'Ferrall, III, Deputy Public Defender*, with whom was *Frank Sacks, Assistant Public Defender*, on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City*, and *Stephen Suser, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

George Robert Johnson was indicted by a Baltimore City grand jury for rape, assault with intent to rape and assault.

On the date that his trial was to begin, he filed in writing, under oath, a suggestion that he could not obtain a fair and impartial trial in the Criminal Court of Baltimore, and he requested that the case be removed to another jurisdiction. Johnson set forth no facts or reasons supporting his suggestion. Instead, his counsel argued that Johnson had an absolute right of removal under Article IV, § 8, of the Maryland Constitution.

The trial judge, after a hearing, denied the request for removal. The judge reasoned that the Maryland Constitution gave a criminal defendant an absolute right of removal only in a capital case, and that as a result of court decisions holding unconstitutional the imposition of the death sentence for rape or for assault with intent to rape, the maximum punishment which Johnson could receive would be life imprisonment. Johnson immediately noted an appeal to the Court of Special Appeals, and the trial court declined to proceed with the criminal trial pending the outcome of the appeal. The Court of Special Appeals, agreeing that Johnson had no absolute right of removal, dismissed his appeal. Because of the importance of the matter, we granted certiorari.

Article IV, § 8, of the Maryland Constitution gives a criminal defendant an absolute right of removal to another court if he is charged with an offense which is or may be "punishable by death." He need do no more than file in writing, under oath, a suggestion that he "cannot have a fair and impartial trial in the court" in which the case is pending. In criminal cases not punishable by death, the constitutional provision requires the defendant to go further and "make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same." Furthermore, where a party has an absolute right of removal under Article IV, § 8, the denial of that constitutional right is deemed a final order and is therefore immediately appealable. On the other hand, where the request for removal under § 8 involves the discretionary act of the trial court in evaluating the reasons therefor, an order declining to remove the case is not deemed final and immediately appealable. *Griffin v. Leslie*, 20 Md. 15, 19

(1863); *McMillan v. State,* 68 Md. 307, 12 A. 8 (1888); *Lee v. State,* 161 Md. 430, 433, 157 A. 723 (1931); *Heslop v. State,* 202 Md. 123, 126, 95 A. 2d 880 (1953); *Brice v. State,* 10 Md. App. 319, 270 A. 2d 131 (1970).

Consequently, if Johnson has been indicted for an offense "punishable by death," he has an absolute right of removal and may successfully appeal the order denying the request for removal. However, if Johnson has not been charged with an offense "punishable by death," his request for removal lies within the trial judge's discretion; the judge's ruling is not immediately appealable; and Johnson's appeal was properly dismissed.

The pertinent legislation relating to rape, as it now appears in the Maryland Code (1957, 1971 Repl. Vol.), Art. 27, § 461, provides that a person convicted of rape "shall, at the discretion of the court, suffer death, or be sentenced to confinement in the penitentiary for the period of his natural life, or undergo a confinement in the penitentiary for not less than eighteen months nor more than twenty-one years . . . ." The same provision is contained in the section setting forth the punishment for assault with intent to rape, Art. 27, § 12.

This Court, in *Bartholomey v. State,* 267 Md. 175, 297 A. 2d 696 (1972), applying the principles set forth in the opinions in *Furman v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972), *reh. den.* 409 U. S. 902, 93 S. Ct. 89, 34 L.Ed.2d 163 (1972), held that "the imposition of the death sentence under any of the presently existing discretionary statutes of Maryland which authorize, but do not require, that penalty is unconstitutional under *Furman* as violative of the Eighth and Fourteenth Amendments to the federal constitution." 267 Md. at 184. Thus, in *Bartholomey* we held unconstitutional the existing provisions of Maryland's criminal statutes (Art. 27, §§ 12 and 461) insofar as they authorized the imposition of the death penalty for rape or assault with intent to rape.

The defendant Johnson argues that, notwithstanding the *Furman* or *Bartholomey* cases, the existing death penalty provisions in the Maryland criminal statutes have sufficient

vitality to keep operative the absolute right of removal under Art. IV, § 8. It is Johnson's theory that the legislative judgment to make certain crimes punishable by death had a dual purpose: (1) to authorize the death penalty; (2) to classify crimes for certain procedural purposes such as the right of removal or the right to bail.

The theory urged by the defendant has been adopted by some courts. *E.g., People v. Anderson*, 6 Cal. 3d 628, 657, 100 Cal. Rptr. 152, 172, 493 P. 2d 880, 899-900 (1972), *cert. dismissed* 406 U. S. 958, 92 S. Ct. 2060, 32 L. Ed. 344 (1972); *People ex rel. Dunbar v. District Court*, 500 P. 2d 358 (Colo. 1972); *State v. Flood*, 263 La. 700, 269 So. 2d 212 (1972); *State v. Holmes*, 263 La. 685, 269 So. 2d 207 (1972); *Hudson v. McAdory*, 268 So. 2d 916 (Miss. 1972); *Jones v. Sheriff, Washoe County*, 509 P. 2d 824 (Nev. 1973); *State v. James*, 30 Utah 2d 32, 512 P. 2d 1031 (1973); *State v. Haga*, 81 Wash. 2d 704, 504 P. 2d 787 (1972). It has been rejected by several others, all holding that the judicial invalidation of capital punishment statutes has rendered inoperative various constitutional provisions, statutes and rules to the extent that they provide different procedures for capital cases. *E.g., In re Tarr*, 109 Ariz. 264, 508 P. 2d 728 (1973); *Vault v. Adkisson*, 254 Ark. 75, 491 S.W.2d 609 (1973); *State v. Aillon*, 295 A. 2d 666 (Conn. 1972); *Donaldson v. Sack*, 265 So. 2d 499 (Fla. 1972); *State v. Johnson*, 61 N. J. 351, 294 A. 2d 245 (1972); *Edinger v. Metzger*, 32 Ohio App. 2d 263, 290 N.E.2d 577 (1972); *Commonwealth v. Truesdale*, 449 Pa. 325, 296 A. 2d 829 (1972); *Ex parte Contella*, 485 S.W.2d 910 (Tex. Crim. App. 1972). We agree with the latter decisions and reject the theory urged by the defendant.

Nothing in the statutory language imposing the death penalty would suggest that the Legislature was doing anything more than prescribing the appropriate punishment for certain offenses. Moreover, there is no basis in the language of the constitutional provision relating to removal, for inferring any purpose other than providing an additional procedural safeguard in a case where a criminal defendant might in fact be put to death. Art. IV, § 8, merely provides that a criminal defendant has an absolute right of removal if charged with an offense "punishable by death." As a result

of the decisions in *Furman* and *Bartholomey*, rape and assault with intent to rape are simply not offenses "punishable by death" under existing law. The defendant is asking us to view the phrase "punishable by death" as if it were worded "formerly punishable by death" or "punishable by life imprisonment." We have no such authority to re-write a constitutional provision. *Cf. Vault v. Adkisson, supra,* 491 S.W.2d at 610.

The history of the constitutional removal section is silent insofar as furnishing any support for defendant's position. The removal provision first came into the Maryland Constitution in 1806 and provided for discretionary removal in all criminal cases. This was changed by the Constitution of 1851, which provided for an absolute right of removal in all criminal cases. The Constitutional Convention of 1864, hearing that the absolute right of removal in all cases had been abused, that removals had caused long postponements in trials, and that witnesses had to travel long distances, decided to return to discretionary removal in criminal cases. The Constitutional Convention of 1867, however, provided again for an absolute right of removal in all criminal cases. The last about-face occurred when the 1874 Legislature, again hearing reports that the unlimited absolute right of removal was being abused, proposed the existing constitutional language for discretionary removal in criminal cases except those punishable by death. This amendment represented the first and only time that the distinction between capital cases and other criminal cases was made in the removal section of the Constitution. *See Heslop v. State, supra,* 202 Md. at 126-130, setting out the history of the constitutional removal provision in Maryland, including an account of the debates thereon.

The history of the removal provision, therefore, shows a shifting concern between having a broad right of removal and having a very limited right because of the abuse associated with requests for removal. The present constitutional language resulted from a desire to narrow the right because of the abuses shown. No other intent is revealed by the historical material. If we were to hold that the absolute right of removal applied to certain offenses

*formerly* punishable by death, we would be broadening the right, not limiting it.

The defendant's position represents an attempt to give effect to unconstitutional statutes. The defendant relies on the unconstitutional provisions now in the Code authorizing the death penalty for certain crimes, for the classification of offenses to which the absolute right of removal is applicable. This is directly contrary to the principle that an unconstitutional act is not a law for any purpose, cannot confer any right, cannot be relied upon as a manifestation of legislative intent, and "is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County,* 118 U. S. 425, 442, 6 S. Ct. 1121, 30 L. Ed. 178 (1886); *Chicago, Ind. & L. Ry. Co. v. Hackett,* 228 U. S. 559, 566-67, 33 S. Ct. 581, 57 L. Ed. 966 (1913). Because of this principle, legislative bodies often fail to repeal unconstitutional statutes, deeming them obsolete matter which can be later deleted in the course of a general revision or recodification of the laws on the particular subject. For example, two bills filed during the 1974 session of the Maryland General Assembly (H.B. 140 and H.B. 602) propose to enact new death penalty provisions for certain offenses but do not repeal all of the overlapping and somewhat inconsistent existing provisions held unconstitutional in the *Bartholomey* case. If such legislation were enacted, and if we were to adopt the defendant's position, utter confusion could result as to which offenses are subject to an absolute right of removal.

As the defendant Johnson was not charged with an offense punishable by death, he had no absolute right of removal under Art. IV, § 8, of the Constitution. The Court of Special Appeals, therefore, correctly dismissed his appeal from the order denying his request for removal.

*Order affirmed.*